**[Cite as *State v. Bersch*, 2021-Ohio-3957.]**

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    20AP0018 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| TERRY BERSCH | WAYNE COUNTY MUNICIPAL COURT COUNTY OF WAYNE, OHIO |
| Appellant | CASE No.    2019 CR-B 001557 |

DECISION AND JOURNAL ENTRY

Dated: November 8, 2021

---

HENSAL, Presiding Judge.

{¶1}   Terry Bersch appeals his conviction for unlawful restraint from the Wayne County Municipal Court.  This Court affirms.

I.

{¶2}   Mr. Bersch was charged with one count of unlawful restraint stemming from an incident wherein he prevented his wife, R.B., from leaving their home.  He pleaded not guilty, and the matter proceeded to a bench trial.  R.B. and Deputy Steven Hunter, who responded to the scene, testified on behalf of the State.  Mr. Bersch then testified on his own behalf.  The witnesses provided the following testimony.

{¶3}   R.B. and Mr. Bersch had been married for 46 years at the time of the incident.  R.B. testified that Mr. Bersch was a hoarder, and that she spent several months away from him in North Carolina before returning home to Ohio and insisting that Mr.

Bersch clean their home. R.B. explained that Mr. Bersch's hoarding got to the point where there was no room to do anything in their home, and there was only a pathway through their living room.

{¶4} After over a year of asking Mr. Bersch to clean their home, R.B. decided she was going to leave him. R.B.'s daughter offered to help her move out, and R.B. accepted. While R.B.'s daughter, son-in-law, and grandchildren were there to help her move out, Mr. Bersch cornered R.B. between the sink and the stove in their kitchen. R.B. testified that she told Mr. Bersch that she wanted to leave the home, and that she "couldn't get out" because Mr. Bersch was physically blocking her from leaving. Mr. Bersch insisted that they talk things through, and R.B. reiterated that she was leaving him.

{¶5} In the meantime, R.B.'s daughter had called the police and told them that Mr. Bersch had R.B. "pinned" in the kitchen. According to R.B., when Mr. Bersch was aware that the police were on their way, he left the kitchen and went to the living room. She followed behind him. When the police arrived, Mr. Bersch walked to the front door, and R.B. again followed him. R.B. testified that the home was so cluttered that it was a single-file path to the front door. She acknowledged that there was another door in the back of the house, but testified on cross-examination that she did not even think about exiting through the back door when the police arrived because it would have been difficult to do so.

{¶6} Mr. Bersch answered the front door while R.B. remained behind him. R.B. testified that, while they were standing near the front door, Mr. Bersch was physically

blocking her from leaving their home. Deputy Steven Hunter asked R.B. to step outside so that he and another officer could speak to R.B. and Mr. Bersch separately about what happened. Mr. Bersch told Deputy Hunter that he did not want to be separated from his wife, and that they would speak together as a group. Deputy Hunter then asked R.B. if she wanted to leave, and R.B. said she did. Mr. Bersch asked Deputy Hunter if he had a warrant and started to close the door on him. Concerned that R.B. might be in danger, Deputy Hunter put his foot in the doorway and placed Mr. Bersch in handcuffs. Deputy Hunter testified that R.B. seemed scared, and that Mr. Bersch was physically larger than R.B.

{¶7} Mr. Bersch testified on his own behalf. He testified that he was in shock when R.B. told him she was leaving him, and that he just wanted to talk things through. He testified that he did not pin her in the kitchen. He explained that he has back problems, and that he put one hand on the kitchen counter and one hand on the stove to support himself in the kitchen. He acknowledged on cross-examination that this resulted in him cornering R.B. in the kitchen, but he maintained that he was only standing that way because of his back problems. Contrary to R.B.'s testimony, Mr. Bersch testified that R.B. walked to the front door first when the police arrived. He later acknowledged, however, that he may have walked to the front door first. He also acknowledged that, while he and R.B. were standing near the front door, it would have been difficult for R.B. to get past him. Mr. Bersch maintained, however, that he did nothing to prevent R.B. from leaving their home to speak with the officers.

{¶8}    After hearing the above testimony, the trial court found Mr. Bersch guilty. He now appeals, raising one assignment of error for this Court's review.

II.

ASSIGNMENT OF ERROR

APPELLANT'S CONVICTION WAS BASED ON INSUFFICIENCT EVIDENCE AS A MATTER OF LAW AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶9}    In his assignment of error, Mr. Bersch challenges the sufficiency and the weight of the evidence presented at trial.  It is well-established, however, that "a review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations."  *State v. Vicente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 18.  Accordingly, "it is not appropriate to combine a sufficiency argument and a manifest weight argument within a single assignment of error."  *State v. Mukha*, 9th Dist. Wayne No. 18AP0019, 2018-Ohio-4918, ¶ 11; *see* Loc.R. 7(B)(7) of the Ninth District Court of Appeals ("Each assignment of error shall be separately discussed * * *."); App.R. 12(A)(2) ("The court may disregard an assignment of error presented for review if the party raising it fails to * * * argue the assignment separately in the brief[.]").  Nonetheless, we exercise our discretion to consider the merits of Mr. Bersch's combined assignment of error.

{¶10} Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the

defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶11} On the other hand, when considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 9th Dist. Summit No. 29290, 2019-Ohio-3970, ¶ 26.

{¶12} Revised Code Section 2905.03(A) governs unlawful restraint, providing that "[n]o person, without privilege to do so, shall knowingly restrain another of the other person's liberty." Here, Mr. Bersch did not argue below, nor has he argued on appeal, that privilege applies. This Court, therefore, will confine its analysis to the element of restraint, and to the mens rea of knowingly.

{¶13} "To restrain another person's liberty means 'to limit one's freedom of movement in any fashion for any period of time.'" *State v. Morgan*, 2d Dist. Clark No. 2018-CA-103, 2019-Ohio-3691, ¶ 42, quoting *State v. Martin*, 10th Dist. Franklin Nos. 02AP33, 02AP34, 2002-Ohio-4769, ¶ 32; *State v. Alghamdi*, 9th Dist. Summit No. 28837, 2018-Ohio-3158, ¶ 5 (addressing Section 2905.03 and stating that "[t]he duration

of the restraint does not have to be prolonged."). Regarding the mens rea, "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "Recognizing that establishing someone's mental state 'is often difficult to prove directly,' the Ohio Supreme Court has held that it can 'be inferred from the surrounding circumstances.'" *Alghamdi* at ¶ 8, quoting *State v. Logan,* 60 Ohio St.2d 126, 131 (1979).

{¶14} Mr. Bersch argues that the State failed to prove that he knowingly restrained R.B. He argues that he took no action to restrain her, that he merely stood by the front door of their home when the police arrived, and that nothing prevented R.B. from leaving through the back door. In support of his argument, Mr. Bersch points to the fact that R.B. testified as to how cluttered the home was, including the fact that there was only a pathway through their living room. His argument seems to infer that this clutter, rather than any action on his part, prevented R.B. from leaving the home.

{¶15} Mr. Bersch's argument lacks merit. While R.B. acknowledged that the clutter in the home made it difficult to move around, she specifically testified that Mr. Bersch physically blocked her from leaving the home after she told him she wanted to leave. She testified that Mr. Bersch cornered her between the sink and the stove in the kitchen, and then physically blocked her from leaving the home after the police arrived. She also testified that she did not think about exiting through the back door since it would have been difficult for her to do so. Viewing the evidence in a light most favorable to the

State, we conclude that a rational trier of fact could have found the essential elements of unlawful restraint proven beyond a reasonable doubt.

{¶16} Turning to the manifest weight of the evidence, Mr. Bersch's argument appears to be that his testimony was more credible than R.B. The trial court, however, was in the best position to assess the witnesses' credibility. *See State v. Robinson*, 9th Dist. Wayne No. 18AP0045, 2019-Ohio-3613, ¶ 10, quoting *State v. Andrews*, 9th Dist. Summit No. 25114, 2010-Ohio-6126, ¶ 28 ("As the trier of fact, the trial court was in the best position to observe the witnesses' demeanor and to 'use th[o]se observations to weigh the credibility and resolve the conflicts in the testimony.'"); *see also State v. Slater*, 9th Dist. Summit No. 28049, 2016-Ohio-7766, ¶ 24 ("[T]he trier of fact is free to believe all, some, or none of a witness' testimony."). Here, the trial court chose to believe the State's version of the events, which is not a basis for reversal. *State v. Horner*, 9th Dist. Wayne No. 16AP0053, 2017-Ohio-7355, ¶ 11. We conclude that this is not the exceptional case in which the evidence weighs heavily against Mr. Bersch's convictions. Mr. Bersch's assignment of error is overruled.

## III.

{¶17} Mr. Bersch's assignment of error is overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CALLAHAN, J.
SUTTON, J.
CONCUR.

APPEARANCES:

WESLEY A. JOHNSTON, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.